IN THE UNITED TATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAYNE CUBBAGE,** | : | CIVIL ACTION |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| **BLOOMBERG, L.P.,** | : | |
| | : | |
| **Defendant.** | : | NO. 05-2989 |

**MEMORANDUM AND ORDER**

PRATTER, J.                                                                                       APRIL 22, 2008

Plaintiff Jayne C. Cubbage sued her former employer, Bloomberg, L.P., pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, *et seq.* She asserts that Bloomberg discriminated against her on the basis of her race, sex and disability; and pursuant to state common law, she also asserts defamation and intentional infliction of emotional distress claims. Most relevant here, Ms. Cubbage alleges that the actions of her supervisors at Bloomberg created a hostile work environment that ultimately resulted in her taking a leave of absence, which in turn led to her subsequent termination.

Bloomberg moved to dismiss the hostile work environment and state common law claims pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] By Order of April 10, 2008, the Court granted Bloomberg's Motion with respect to the defamation and intentional infliction of

---

[1] Bloomberg does not challenge the sufficiency of the First Amended Complaint with respect to Ms. Cubbage's discriminatory discharge claims.

emotional distress claims without prejudice. The Court also granted Ms. Cubbage leave to amend the Complaint to correct certain typographical errors by substituting reference to New Jersey state law for the apparently mistaken reference to Pennsylvania state law. For the reasons discussed below, the Court will deny the Motion with respect to the federal and state hostile work environment claims.

**FACTUAL BACKGROUND**

For the purposes of a motion to dismiss, the facts alleged in the First Amended Complaint are deemed to be true. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In relevant part, the facts as alleged in the First Amended Complaint are as follows.

Bloomberg employed Ms. Cubbage, an African-American woman, as a multimedia producer from May 2000 to May 3, 2004, when she was terminated during a leave of absence. (Amd. Compl. ¶¶ 10, 13, 16, 30.) As a result of the hostile work environment she claims to have experienced while at Bloomberg, in September 2003 Ms. Cubbage was diagnosed with anxiety disorder and depression. (Id. at ¶¶ 11, 24, 25.)

Ms. Cubbage performed her work in a satisfactory manner during her tenure. (Id. at ¶ 17.) However, her supervisors continuously harassed her and discriminated against her because of her race, sex and/or disability. (Id. at ¶¶ 10-11, 13-14, 18, 34-35, 37, 38, 39, 43.) For example, Ms. Cubbage was "belittled, ridiculed and made to feel inferior in front of her peers" (id.), and she was subject to disparate treatment in terms of assignments and pay (id. at ¶ 22). In August 2003, despite her qualifications and experience, Ms. Cubbage was denied a promotion because of her race. (Id. at ¶ 21.) As a result of the harassment she faced at work, Ms. Cubbage took a medical leave of absence starting in September 2003. (Id. at ¶ 23.)

Around March 1, 2004, a Bloomberg representative contacted Ms. Cubbage and inquired when she planned to return to work. (Id. at ¶ 26.) Ms. Cubbage responded that she would not return to work until she received permission to do so from her doctor. (Id. at ¶ 27.) The Bloomberg representative then demanded an immediate response from Ms. Cubbage as to when she would return to work. (Id. at ¶¶ 28-29.) Bloomberg's approach prevented Ms. Cubbage from requesting a reasonable accommodation of additional sick leave in order "to obtain an effective medical dosage from her doctor to allow her to return to work." (Id. at ¶ 29.) By later dated May 3, 2004, Bloomberg terminated Ms. Cubbage's employment. (Id. at ¶ 30.)

**PROCEDURAL HISTORY**

Ms. Cubbage filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and the New Jersey Department of Civil Rights on October 4, 2004. (Def. Mot. Ex. A.) She received a "right to sue letter" from the EEOC on March 22, 2005. (Id.) On June 22, 2005, she filed her initial Complaint in this case. On October 9, 2007, the Court entered a default judgment against Bloomberg, which was later set aside on November 16, 2007 following a hearing and upon the Court's finding that Bloomberg was never properly served.

Ms. Cubbage filed her First Amended Complaint on November 28, 2007. Bloomberg moves to dismiss the federal and state hostile work environment claims asserted in Counts I and II on the grounds that they are time-barred.[2]

---

[2] Bloomberg contends that the New Jersey state law claims, which were not included in the original Complaint admittedly as a result of Ms. Cubbage's counsel's self-described typographical error, cannot relate back to the original Complaint for statute of limitation purposes because such claims would have been untimely even if they had been included at that time. Having determined that New Jersey state law claims otherwise relate back to the original Complaint, the Court now addresses whether those claims would have been timely had they been included in the original Complaint.

**LEGAL STANDARDS**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (quoting Conley, 355 U.S. at 47). While a complaint need not contain detailed factual allegations, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (citations omitted). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 1965 (citations omitted).

In making such a determination, courts "must only consider those facts alleged in the complaint and accept all of those allegations as true." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994) (citing Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984)); see also Bell Atlantic, 127 S. Ct. at 1965 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"). The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). The Court, however, need not accept as true "unsupported conclusions and unwarranted inferences," Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (citing City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal conclusions," Morse v. Lower Merion Sch. Dist., 132 F.3d.

902, 906 (3d Cir. 1997).

To evaluate a motion to dismiss, the Court may consider the allegations contained in the complaint, exhibits attached to the complaint, matters of public record and records of which the Court may take judicial notice.  See Tellabs, Inc. v. Makor Issues & Rts., 127 S. Ct. 2499, 2509 (2007); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).  Thus, in this case, the Court considers the procedural record of the filing of Ms. Cubbage's complaint to the EEOC.

**DISCUSSION**

Ms. Cubbage alleges that her supervisors at Bloomberg harassed her on the basis of her race, sex and/or disability in violation of Title VII and the NJLAD.  While certainly not conceding the conduct, Bloomberg asserts that the Title VII hostile work environment claim is time-barred because Ms. Cubbage did not file an EEOC complaint within 300 days of her *last day physically at work*, which occurred some seven months prior to her termination.  According to Bloomberg, the NJLAD hostile work environment claim is also time-barred because Ms. Cubbage filed her initial judicial Complaint over two years after her *last day physically at work* (but less than two years after her *termination*).  As discussed more fully below, because as a matter of law Ms. Cubbage's termination can constitute a component part of her hostile work environment claims, the Court concludes that both claims have been timely brought.  The Court also concludes that Ms. Cubbage has alleged sufficient facts to state a hostile work environment claim under both federal and New Jersey law.

**A.     Statute of Limitations**

Under Title VII, a plaintiff must file a charge with the EEOC within 300 days of any

5

alleged discriminatory event to preserve the right to later pursue the case in federal court. 42 U.S.C. § 2000e-5(e)(1). Every discrete event that forms the basis of a discrimination claim must be included in a timely EEOC charge. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). Discrete discriminatory acts that occur outside the 300-day period are not actionable. Id. Hostile work environment claims, however, are treated differently for purposes of determining timeliness. See id. at 116-18.

Claims arising under the NJLAD are subject to a two-year statute of limitations. Montells v. Haynes, 627 A.2d 654, 655 (N.J. 1993). Because the New Jersey Supreme Court has adopted the Morgan analysis to determine the timeliness of hostile work environment claims, Shepard v. Hunterdon Dev. Ctr., 803 A.2d 611, 623 (N.J. 2002), the following analysis applies with equal force to both the NJLAD and Title VII hostile work environment claims.

Statute of limitations analysis in hostile work environment claims can be somewhat more intricate than timeliness evaluations for other claims. It begins with a consideration of the nature of liability for such a claim. For purposes of determining liability, a court may consider all conduct related to a hostile work environment claim, *including those acts that occur outside the limitations period*. Morgan, 536 U.S. at 116-17. Noting that "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute an 'unlawful employment practice,'" the Supreme Court held that "[i]t does not matter, for purposes of the statute [of limitations], that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for

the purposes of determining liability." Id. at 116-17.[3]  Because "the incidents constituting a hostile work environment are part of one unlawful employment practice," a charge will be considered timely so long as the employee files "a charge within 180 or 300 days of any act that is part of the hostile work environment." Id. at 118.

Here, the issue of whether Ms. Cubbage's hostile work environment claims are time-barred turns on whether, for purposes of the limitations period, Ms. Cubbage's termination is considered part of her hostile work environment claim.[4]  There are two distinct events and dates to consider, namely, the date of Ms. Cubbage's last day actively at work, which occurred sometime in September 2003, and the date of her termination, which was May 3, 2004.  Ms. Cubbage filed an administrative complaint with the EEOC on October 4, 2004, *less than* 300 days and, obviously, well less than two years after her termination, but *over* 300 days, though, again, less than two years after her last day at work.[5]  (Amd. Compl. ¶¶ 23-24.)  Thus, Ms.

---

[3] The Supreme Court explained that

> [i]t is precisely because the entire hostile work environment encompasses a single unlawful employment practice that we do not hold, as have some Circuits, that the plaintiff may not base a suit on individual acts that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on such conduct. The statute does not separate individual acts that are part of the hostile environment claim from the whole for purposes of timing and liability.

Morgan, 536 U.S. at 117-118.

[4] Morgan did not address whether termination may be considered a component part of a hostile work environment.

[5] The First Amended Complaint does not expressly state Ms. Cubbage's last day of work, while the EEOC Complaint states that Ms. Cubbage began her leave of absence on September 5, 2003.  In any event, even assuming Ms. Cubbage worked through the last day of September 2003, the 300th day for timely filing purposes would be July 26, 2004, well before the date Ms.

Cubbage's termination is the only alleged discriminatory act that falls within the respective federal and state limitations periods. If her termination is considered part of the alleged hostile work environment, the entire hostile work environment claim is timely. If not, the hostile work environment claim is entirely time-barred.

Bloomberg asserts that any hostile work environment claim is necessarily circumscribed not by the period of Ms. Cubbage's employment, but by the period she was actually physically "at work." In other words, according to Bloomberg, Ms. Cubbage could not have experienced a "hostile work environment" after the commencement of her leave of absence in September 2003. Bloomberg essentially imposes a spacial quality to "work environment."

Ms. Cubbage argues against such a literal interpretation and responds that the alleged harassment of her continued during her leave of absence and culminated in her termination on May 3, 2004. For example, she alleges that while she was on leave, on March 1, 2004, a Bloomberg employee inquired of her when Ms. Cubbage would be returning to work and allegedly demanded an "immediate response . . . as to when she would be returning." (Amd. Compl. ¶¶ 26-28.) Asserting that her termination is thus part and parcel of her hostile work claim, Ms. Cubbage contends that any applicable limitations period should begin on the date of her termination, rather than the date of the last day she was physically at the location where she performed her work. The Court agrees that analytically the hostile treatment by an employer need not occur only when the employee is coming to the employer's location to work on a regular basis, but rather it can occur as long as there is an employment relationship extant. Accordingly, the Court concludes that Ms. Cubbage's hostile work environment claims are

---

Cubbage filed her EEOC Complaint on October 4, 2004.

timely based upon the consideration of the cases discussed below.

Bloomberg points to Santiago v. Newburgh Enlarged City School Dist., 485 F. Supp 2d, 327 (S.D.N.Y. 2007) to support its position, but the Court finds that case unpersuasive here. Certainly, it has no precedential value for this case. Neither does that court's articulation of the issues draw this Court to adopt its approach. In Santiago, the court dismissed a hostile work environment claim where the plaintiff was fired while she was on disability leave. Id. The Santiago plaintiff's last day of work occurred more than 300 days before the filing with the EEOC, but her termination did not. Santiago, 485 F. Supp. 2d at 329-330. Granting the motion to dismiss the hostile work environment claim, the court stated that

> The only relevant fact for our purposes is whether plaintiff was in the workplace during the 300 day period prior to her filing of the [EEOC] charge . . . . It is undisputed that she was not. She thus has no viable claim for the creation of a "hostile work environment" during that period.

Id. at 335. However, Santiago does not directly address whether termination could *ever* constitute part of a hostile work environment claim.[6]

One can posit situations where the act of terminating an employee and the alleged hostile work environment are inextricably linked. For example, in Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843 (2001), the plaintiff allegedly was sexually harassed by a co-worker.

---

[6] McClease v. R.R. Donnelley & Sons Co., 226 F. Supp 2d 695 (E.D. Pa. 2002), another case that Bloomberg cites, is not helpful here because in that case the court dismissed a hostile work environment claim against one of the defendants because *all contact* between that defendant and the plaintiff had ended over 300 days prior to the filing of the administrative complaint. See id. at 705. Moreover, in McClease, it was the *defendant* who withdrew from contact with the plaintiff, thus effectively ending any sort of work environment. Here, in contrast, Bloomberg continued to contact Ms. Cubbage during her leave of absence up to and including her termination. Bloomberg's argument that no harassment could have occurred after Ms. Cubbage's last day at work assumes a complete separation that was evident in McClease, but absent here.

9

Consequently, the plaintiff took a medical leave of absence, and refused to return to work because she believed the direct harassment would continue. Id. at 845. While the plaintiff remained on medical leave, the employer fired the plaintiff for her failure to return to work. To be sure, the administrative limitations period was not at issue in Pollard, but the factual circumstances illustrate how a hostile work environment can be linked to an employee's termination. Here, in the context of a motion to dismiss, where the Court must draw all inferences in favor of the nonmoving party, the Court concludes that Ms. Cubbage's termination is sufficiently linked to the alleged hostile work environment that it may be considered part of her hostile work environment claim for purposes of evaluating the limitations period.

Thus, the federal and state hostile work environment claims are timely because Ms. Cubbage's termination occurred within the applicable limitations periods.

**B.    Sufficiency of the First Amended Complaint**

Having reviewed Ms. Cubbage's First Amended Complaint, the Court concludes that it is at least minimally sufficient to make out state and federal hostile work environment claims.

Title VII makes it an unlawful employment practice for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In order to establish a hostile work environment claim under Title VII, a plaintiff must show that (1) the plaintiff suffered discrimination because of membership in a protected class, (2) the discrimination was pervasive and regular, (3) it detrimentally affected the plaintiff, (4) the discrimination would have detrimentally affected a reasonable person of the same protected class in the same position, and (5) there is a basis for vicarious liability.

Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001).

The harassment "must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment."  West, 45 F.3d at 753 (citing Meritor Sav. Bank v. Vinson, 477 U.S. 57, 67 (1986)) (internal quotations omitted)); see also Andrews v. City of Phila., 895 F.2d 1469, 1482 (3d Cir. 1990) (characterizing the second prong of the test as whether the harassment is "pervasive or severe").  The Court must consider the "totality of the circumstances" to determine whether the alleged conduct constitutes a hostile work environment.  Cardenas, 269 F.3d at 260-61; West, 45 F.3d at 753.

Our Court of Appeals has cautioned that in considering whether a plaintiff has established the elements of a hostile work environment, "the record must be evaluated as a whole to decide whether the plaintiff has proved his or her case, because '[p]articularly in the discrimination area, it is often difficult to determine the motivations of an action and any analysis is filled with pitfalls and ambiguities . . . . [A] discrimination analysis must concentrate not on individual incidents, but on the overall scenario.'"  Cardenas, 269 F.3d at 260-61.  Moreover, Title VII applies to both "facially neutral mistreatment" and "overt ethnic discrimination," which in sum constitute the hostile work environment.  Id. at 261 (citing Aman, 85 F.3d at 1081-84) (discussing the obligation of the courts to be "increasingly vigilant" against subtle forms of discrimination, and the importance of allowing plaintiffs to prove discrimination indirectly).  As the court of appeals has explained, "the advent of more sophisticated and subtle forms of discrimination requires that we analyze the aggregate effect of all evidence and reasonable inferences therefrom, including those concerning incidents of facially neutral mistreatment, in evaluating a hostile work environment claim." Id. at 261-62.

At this stage in the litigation, the Court may consider acts of harassment or discrimination that occurred outside the limitations period so long as at least one act or event occurred within the limitations period. Morgan, 536 U.S. at 116-17. Ms. Cubbage's termination, which the Court concludes is part of her hostile work environment claim, occurred within the limitations period, thus permitting the Court to consider alleged acts or events that occurred prior to Ms. Cubbage's leave of absence.

Ms Cubbage alleges throughout her First Amended Complaint that she suffered discrimination on the basis of her race, gender and disability, thus addressing the first prong of the prima facie case. She meets the second prong by alleging that the discrimination was pervasive and regular in that it "repeatedly and continuously" occurred on "numerous" occasions (Amd. Compl. at ¶¶ 18-19). Ms. Cubbage's allegations, if taken as true, also demonstrate that she was detrimentally affected by the harassment as required by the third prong. Indeed, she allegedly took a leave of absence as a result. (Id. at ¶ 23.)

Ms. Cubbage weakly, but adequately, alleges the fourth prong, namely, that the discrimination would have detrimentally affected a reasonable person of the same protected class in the same position. Ms. Cubbage alleges that she was denied a promotion and "subjected to disparate treatment in terms of assignments and pay." (Amd. Compl. ¶¶ 21, 22.) She also alleges that she was harassed, ridiculed, belittled and subjected to derogatory remarks, even though she fails to specify the nature of the comments or the identity of alleged speaker(s). (Id. at ¶¶ 18-20.) That said, the allegations nonetheless are sufficient "to raise a right to relief above the speculative level . . . ." Twombly, 127 S. Ct. at 1965 (citations omitted). Lastly, Ms. Cubbage also has alleged that she was harassed by her supervisors (Amd. Compl. ¶ 18), thus

providing a factual basis for the final prong, vicarious liability.

Under New Jersey law, to state a hostile work environment claim, a plaintiff must show that the offending conduct would not have occurred but for the employee's membership in the protected class, and it was severe or pervasive enough to make a reasonable person of the same protected class "believe that the conditions of employment were altered and the working environment was hostile or abusive." Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 114 (3d Cir. 1999) (citing Lehmann v. Toys R Us, Inc., 626 A.2d 445, 453 (1993)).

According to the Third Circuit Court of Appeals, "New Jersey courts have placed a less onerous burden on the plaintiff by omitting the final prong of the [Title VII] analysis. Therefore, any plaintiff who has fulfilled the Title VII prima facie case will have also shown the elements required by the NJLAD." Abramson v. William Paterson College, 260 F.3d 265, 277 n.7 (3d Cir. 2001). Accordingly, because Ms. Cubbage has fulfilled the Title VII prima facie case, the Court will not separately analyze Ms. Cubbage's NJLAD claim. Ms. Cubbage's allegations suffice to state a claim under the NJLAD based on her showing under Title VII.

**CONCLUSION**

For the foregoing reasons, the Motion to Dismiss is denied with respect to the state and federal hostile work environment claims. An order consistent with this Memorandum follows.


BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAYNE CUBBAGE,** | : | CIVIL ACTION |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| **BLOOMBERG, L.P.,** | : | |
| | : | |
| **Defendant.** | : | NO. 05-2989 |

## ORDER

AND NOW, this 22nd day of April, 2008, upon consideration of the Defendant's Motion to Dismiss the First Amended Complaint (Docket No. 20), the Plaintiff's response thereto (Docket No. 22) and the Defendant's reply (Docket No. 23), it is hereby ORDERED that the Motion to Dismiss is DENIED with respect to the Plaintiff's Title VII and NJLAD hostile work environment claims.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge